Good morning, your honors. My name is Alexandra Gill. I represent both of the defendants, officers Sean Roycroft and Spencer Jackson. Chief Justice Barron, if you would be so kind as to introduce yourself. I would like to reserve three minutes of my time for rebuttal. Your honors, this is an appeal from the denial of qualified immunity at summary judgment arising out of events that occurred when a call involving two officers responding to a 911 call was disconnected and where the subject of the call, Robert Miller, was noted to be delusional. Officer Roycroft approached. Mr. Miller became agitated. A struggle ensued in the home. Officer Jackson came shortly afterwards. We're only looking at the part of the case during which the officers were struggling on the ground on the floor of a recessed area within the home. And throughout that entire struggle, one of the officers was trapped under the subject the entire time. The district court made that finding and failed to include it in its analysis as to whether or not the law is clearly established in terms of the qualified immunity defense. The district court's holding essentially requires officers who are in peril, who have been placed in a compromised position by the subject they're trying to restrain to stop what they're doing and give in. With those standards, nobody is going to apply for a police officer position. Counsel, focusing on those key minutes, as you said, when they're in the office, the issue here really is, is there enough to go to a trial? And the question I have for you is, given the testimony by Mr. Miller's partner that he said out loud that he was having trouble breathing and then a moment later said, Amy, can you help me? So he had indicated distress multiple times. Why aren't those statements enough, given the preexisting law, to send this to a jury? Because at that point, again, I understand the testimony is disputed, but viewing it in the light most favorable to Mr. Miller, why at that point wouldn't a reasonable officer have known that they needed to change what they were doing to make sure that the person didn't have serious consequences? We are adapting that as a fact. It's part of the plaintiff's best version and one of the findings that the court made at the summary judgment stage. But what's also not in dispute is that Mr. Miller was thrashing, twisting, and kicking the entire time he was on the floor. So because of that, the case law has not established that you have, when you have a subject you're attempting to restrain, who's forced to do what they're doing. So the case law has not established that he's flailing and kicking, even if he states he can't breathe, that the officer isn't permitted to apply any force. What would that mean, though? I mean, somebody has just indicated that they can't breathe, and you're saying the officers can just continue with what they're doing once they've been told that the person can't breathe? In this case, you have an officer whose arm was trapped underneath the subject, and they were involved in a push and pull struggle. The plaintiff's expert acknowledges that you don't want your arm trapped in a struggle with a suspect for multiple reasons. Absolutely. I understand everything that you're saying. But again, once a person who's not a criminal suspect, somebody who the police were called to help because of a mental health situation, is indicating that they can't breathe. How is it reasonable to continue with the course of conduct that has led the person to say that they can't breathe? I think that's what I'm really trying to understand from you. How could that be a reasonable decision for an officer to make, given all of the other cases making clear that somebody, when they're lying face down, you know, in a prone position, there are risks that the person could die? I think with respect to that issue, Your Honor, the analysis is more focused on the lack of any kind of clear indication that the person can't breathe. There's no clearly established case law that says a subject who says they can't breathe while they're actively flailing and kicking should not be, the officer shouldn't continue to try to restrain them. The only case that's really close, if you can call it that, is the McHugh v. Banger case. And that definitely established that you can't apply significant continued force on a person's back. Post-restraint, while the person is prone in a face-down position. But those facts really differ here. Is that right? I thought there was a period of time in which the arm had been removed and in which the knee was on the back, according at least to Anderson's testimony. And you're just saying that's just not true? Right, Your Honor, I don't believe the district court judge found that fact. It's not in the record. It is something that the plaintiff argued in their response brief based on what I think is a miscalculation of the timeline. But the testimony from Ms. Anderson... Your view of what the district court found. Are you saying the district court found that the person was thrashing throughout the entire period? Yes, Your Honor. The district court's holding says that Mr. Miller was moving and thrashing. If we set aside intent... There's two different periods. There's the period of being handcuffed and then there's the period of being potentially subdued where the arm is removed from being under the body. Aren't those two different types of things? The word restraint might be a little bit unclear as to what we're talking about with respect to that. Yes, Your Honor. The testimony does indicate that Mr. Miller was thrashing up until the moment he was handcuffed and actually Ms. Anderson testified that he continued to kick a little longer. But I'm not asking what the testimony, I'm trying to figure out what the district court is saying. And the district court, when she's talking about the restraint period, is that... Your view is the district court identified no period of time in which the victim was not kicking? Correct. And if we read the district court differently than you, then you're just disputing the facts of the district court. Correct, and that's something I'm not permitted to do at this stage in an interlocutory appeal. So your case hinges on us agreeing with you that the district court found that he was kicking throughout. Well, even if he didn't, the clearly established arguments still apply. So even if Mr. Miller was not kicking throughout, if Officer Roycroft continued to be trapped underneath him... Correct, but again, if we read the district court not to have found that he was trapped throughout and there was a period of time in which he was subdued, then what follows? Then the relevant question becomes how long the knee was on the back? I'm not saying you necessarily agree with this is how to read the district court opinion. I'm asking if you read the district court opinion that way, the relevant question on McHugh would then be how long was the knee on the back, or is your position that even if he were subdued, McHugh only applies in the case of whether you're handcuffed? Even if he were subdued, McHugh v. Roycroft only applies post-restraint. What does restraint mean? The case law indicates that it's subdued or incapacitated. So it doesn't have to be handcuffed? Correct. If we read the district court to have a period of time like that, then all that's left in your case is some contention that the consistent significant pressure on the back wasn't clearly being placed, right? I would still distinguish McHugh because of the facts in that case and say that they're too distant from the facts in this case with five officers and there was no officer who was compromised. The McHugh officers were already, he was already restrained with his hands behind his back and then they tried to hogtie him, which, during which a knee on the neck of McHugh. Judge Barron's question, if there was a period where the district court found that he was restrained and subdued, but there was still applied pressure on the back, then what is your argument? That it doesn't comport with the facts of McHugh because it wasn't for as long a period of time. But I don't read the district court decision to have found that and that's why we've argued, made the arguments we have. Just on that last point, when you say it's not long enough a time, how are we supposed to think through that? We have the testimony from Anderson about, she thinks, seeing the knee on the back. I take it, is there any other evidence in the record about how long the knee was on the back? The only evidence in the record about the knee is that she testified the officers, one officer unidentified used a knee in the back simply to obtain leverage to apply the handcuffs for a few seconds. Let's say that's the only evidence about the duration of the significant pressure on the back, at least due to the knee, as opposed to, I guess the forearm is a separate issue, but due to the knee. What is your view about the significance of that for your case, if that's the only evidence? I think it stands in stark contrast with McHugh because you have them restraining him, having a knee on the neck, then getting him hog tied. And even after his hands and ankles or legs are restrained, they remain seated on him or kneeling on him for a minute and a half. So I don't think the facts of that case would give an officer fair notice that the law is clearly established in that area. The appellee is arguing that the notice is that, it's the principle that it's the pressure on a prone person lying on their belly that is what the officer is, has clear notice of. Not necessarily that the conduct may be as extreme as in McHugh. Well, I do think that the analysis needs to be specific, and it doesn't have to be exactly the same facts, but the facts, the fact patterns in the two cases are so different. When you have five officers, when you have him already restrained, when you have him then hog tied and then more restrained, more kneeling and pressure being applied after the fact. On these facts, an officer was trapped and Mr. Miller continued to thrash and kick. Counsel, I had read the district court to say that the key issue in this case was really whether what you're describing as him continuing to kick and flail was resistance or not. I thought the district court said the issue really, based on the previous case law as well, is that a reasonable jury could conclude that by lifting up his back and moving his legs, he was just struggling to breathe, and it was not resistance to being subdued. It was an attempt to stay alive, and that that had been recognized in previous cases. And so while the officer may have subjectively believed that that's resistance, a jury can conclude actually in the circumstance it wasn't reasonable to find that somebody face down with their hands underneath them who just said that he was having trouble breathing was resisting. So I thought that was really the critical issue that the district court thought the jury needed to resolve. Do you disagree on whether that's the critical issue? I do agree that the district court did find that a reasonable jury could view the movements by Mr. Miller to be because he couldn't breathe as opposed to active resistance. However, none of the cases that stand for the proposition that that would be a clearly established violation of a constitutional right involve an officer who is himself in jeopardy, at risk. The plaintiff's own expert says that he wouldn't be able to, if his arm were trapped, switch to a different use of force. And in Gray v. Cummings, the officers also had very little information to go on, and this court said they needed to be prepared for the worst. So I think I'm, am I out of time? You are. Thank you very much. Thank you, Your Honors. May it please the Court. Matthew Wessler for the family of Robert Miller. I think as the conversation we just heard illustrates, the officer's appeal here trips at the threshold because it fails to accept the facts in a light most favorable to Mr. Miller, and it does that by challenging the district court's analysis of the record facts at almost every turn. As this court has repeatedly made clear, if resolving an officer's interlocutory appeal of a denial of qualified immunity depends upon whose account of the facts is correct, this court lacks authority to provide the answer, and because that's precisely the case here, this court should dismiss the appeal for lack of jurisdiction. I'd like to start by focusing on what I think are the key findings the district court made that the officer's appeal directly challenges. First, in denying the officer's motion for summary judgment on qualified immunity, the district court held that viewing the facts in a light most favorable to Mr. Miller, a jury could conclude that Mr. Miller was both restrained and not actively resisting at any point once Officer Roycroft took him to the ground. As the district court explained, a jury could reasonably conclude that all Mr. Miller was trying to do was to resist once he was on the ground, face down in a prone position, with Officer Roycroft's arm and half his body weight. But do we have a fine, I guess if I'm understanding your opponent's argument, a finding about what the victim was trying to do is distinct from a finding about what the victim was doing physically, and what the victim is doing physically may be of more relevance to the reasonable officer's perception of things, which is what ultimately the case law makes us focus on, rather than what the victim in fact was doing. Do you follow? I take what I think Your Honor is suggesting, and we don't dispute that the district court, as part of its assessment of the record, recognized that there was some flailing, kicking that was going on while Mr. Miller was on the ground and Officer Roycroft was on top of him. Now, there is no finding in the record, the district court didn't make a finding about the duration of time that the flailing occurred, but what the officers argued below was that that flailing was an indication that there was active resistance. And what the district court said was, yes, it's possible a jury could conclude that that was what was going on, but it is also possible that a jury could conclude that the flailing, as Judge Reichelman, you suggested, was a product of Mr. Miller's futile attempt to breathe because he was in this position with compressed weight on his back. But there's still a gap, I guess the relevant question is, would an officer, because under qualified immunity case law, an officer can make a mistake of fact and still be protected. So do we have anything that tells us on this record, regardless of what a jury could find about what the reason for his motions were, how that would have been perceived, the nature of those things, such that we could make a judgment about whether it would have been reasonable for an officer to perceive that there was resistance, which is a different question than whether there was an intended effort to resist. Well, I do think the district court, in its opinion, held that an officer, an objective officer in Officer Roycroft's position, would have recognized that those actions were a product of the victim attempting to breathe. Where does she find that? This is at addendum 22 through 24. And I think part of what the district court is saying is that these officers have training that tells them that in this situation, they're supposed to avoid placing a suspect face down in a prone position, especially in a situation where there's little or no force, little or no threat that either they're facing or somebody else is facing. And so, you know, what the basis of... So that's a jury could find that an objectively reasonable officer with his training would have concluded Miller was struggling to breathe. Yes, Your Honor. And I think what we have here is... Taking that point, there's the second issue about the consistent significant pressure. So taking it that we have a period, contrary to what was being argued by your opponent, in which the district court appears to treat the victim as subdued and reasonably perceived to be subdued by a reasonable officer with training. For the excessive force to exist, it's not enough just that they be... Under McHugh, at least arguably, what you're on notice of is you can't then apply significant continued pressure on such a person in that state. And the significant consistent pressure, I thought, was the knee on the back. Is that wrong? Well, that's, I think, part of it. Okay. So just starting with the knee. Yep. Am I right that the only evidence as to that is the Anderson testimony? The Anderson testimony and the officers have conceded that although there's some uncertainty about who may be placed the knee, that there was a knee placed on the victim at some point during the encounter. For purposes then of applying McHugh and its standard of significant continued pressure. Yep.  If the testimony is a knee was on the back, and I understand the tragedy of the situation. This is qualified immunity. We're just applying it. How is a juror with just that evidence able to make an assessment that there's significant consistent pressure, as opposed to fleeting, momentary, other kinds of words that don't seem to quite fit with the McHugh test? So I'll push back, I think, on the premise of your question, because I do not think what we're talking about is just a knee for several seconds. That is what the officer's argument is, but that is definitely not what the district court found. So just point me to where she's finding it. So there are two places. I'll point you to the addendum on page 24 again, where the district court says a reasonable jury could infer that approximately half of Roycroft's weight was on Miller's back while he was restrained on the floor, and that Roycroft used his right arm to apply pressure on Miller's back. So that's number one. And that phrase, while he was restrained, that's the period post-dating the time, as you read the district court's opinion, post-dating the time she identifies as the time at which a reasonable officer would have perceived him to be insofar as he was moving, moving only because he couldn't breathe. Yes, but there's more than that, and I think this is important to help maybe with the timeline. If you go to addendum page 29, you'll see that the district court identifies the duration of this compressive pressure on Mr. Miller's back. And this is what it says, and I think this is actually key to why I think this court lacks jurisdiction for this appeal, is that the district court says, and I'm just going to quote it, there's a genuine dispute how long Miller was on the floor. Jackson estimates that approximately, this is Officer Jackson, estimates approximately 60 seconds transpired between the time he arrived and the time he was on the floor. And he says, at the moment Miller was handcuffed, based on the time Roycroft heard the sliding door fall out of its frame and the time the EMTs were called, use of force expert to foe theorizes Roycroft applied pressure on Miller's back while attempting to handcuff him for approximately 2 minutes and 15 or 30 seconds. And that's the window that we, yep. As you read in the district court, this has been the problem I've had a little bit in trying to understand what's happening in this case. That 2 minute and 15 second period all follows the moment at which, according to the district court, a reasonable officer would have perceived he was no longer resisting, or there's overlap between the two of how much time. And can we tell from the district court's opinion what the finding is on that point? I think the district court's finding is that there was no, that a jury could conclude that an objective officer would not have read the situation, to involve any active restraint. At any point? At any point, once. You mean active resistance. I'm sorry, active resistance. Active resistance is once Officer Roycroft took Mr. Miller to the ground. And that is due to a number of different factors, including the training that the officers had about what to do in situations like this. The absence of any crime, the absence of any weapon, the absence of any threat posed either to Anderson or the officers. So if that's the case, then that 2 minutes and 15 seconds starts then? That's how you read the opinion? Yes, yes, exactly. It's that there's about approximately a minute of time between when Officer Roycroft reaches the house to the point in time at which he takes Mr. Miller to the ground, and then there's approximately 2 15 or 2 30 minutes of time in which the officers are on top of Mr. Miller compressing him onto the ground. Counsel, is that also partially because of, the district court describes this, I don't know that she explicitly uses it as part of her findings, but the way I read the opinion is Mr. Miller was lying face down with both of his arms underneath him. That's why they couldn't see what was in his arms or access them, right? So in a position where he can't really move his hands at all. Correct, and that's a product, I'm sorry. I was just going to say that is part of the overall facts that she was talking about that makes it seem like he wasn't in a position to resist. Correct, and that is a function entirely of the unauthorized seat belt hold that Officer Roycroft applies to Mr. Miller as he's taking him down is that the arms are then trapped. But we're not considering that. No, as an explanation for why his arms are trapped. Now, I will say that if I could, just one response on that, which is, you know, there are multiple cases from this court, from other courts, in which victims' arms are trapped underneath them. And what this court said in McHugh and what the Sixth Circuit has said as well is that, you know, what happens when a victim is lying prone on the ground with this kind of sustained compressive weight on their back is that they are trapped. They are asphyxiating. They cannot breathe, and the more pressure that's placed, the harder it is for them to get breaths. And what the district court found here, starting from that two-and-a-half-minute period, was that as Mr. Miller pushed up to try to breathe, Officer Roycroft pushed down. That starts before any of the knee, whether the knee is on or not, comes in. Now, Chief Judge Barron, to your question about just the knee, even if you thought that it was somehow wrong for the district court to draw the line at the two-and-a-half minutes, there is still a minute of time from the point at which the arms are freed, Judge Reichelman, and the officers obtain Mr. Miller's hands. There's still a minute of time in which they are placing sustained pressure on Mr. Miller's back as they attempt to handcuff him. And that, we would submit, even just on its own, falls within the four corners of McHugh, of Abdullahi, of the series of cases that have addressed this kind of situation. Go ahead. Can I just ask one more question, though? Because one of the things that I've been struggling with, and your opposing counsel focused on it and it makes sense, is that this case is different factually, because the officer is trapped. His arm is trapped under Mr. Miller, and, you know, qualified immunities, he's not going to be able to breathe. And as Chief Judge Barron says, does not punish officers who make mistakes. And he is in just a far more compromising situation than the officers in the other cases that you've just talked about. So how should we think about that key factual difference in terms of doing our legal analysis here? Right. So, I mean, two responses to that. The first is, if you thought that mattered and the district court here held that a jury could conclude that it didn't make a difference and that an objective officer would have thought. The second to me is more, why couldn't an objectively reasonable officer conclude that it does make a difference? Objectively reasonable people can reach different decisions. Which is why I think it's important to say we're at an interlocutory appeal stage. If a jury were to conclude that the officers were entitled to qualified immunity at a trial, that would be a sufficient basis, potentially, for that to happen. But I think what this court has said in a series of cases is that's why we ought to be reluctant at this stage, particularly when the district court has identified these material disputes of fact, to resolve this kind of question, unless the officers are willing to accept the best version of facts for what a jury could find in the favor of the victim. Having said that, though, I think I'd maybe just offer a more precise answer to your question, which is even if you thought that being trapped made a difference to the analysis, there is still this minute of time that happens after Officer Boycroft's arm is freed. And I think that, you don't need to know, I don't think anything else about this encounter, except that that minute of time there is, the officer is not trapped, he has full range of motion, they have his hands, and that comfortably fits within the four corners of McHugh. But you say even if we conclude that being trapped makes a difference, how could we conclude otherwise? I mean, the case law is clear that we have to look at the facts, right? The excessive force analysis really depends on the facts. That is a major factual difference about this case and obviously impacts the reasonableness of the officer's responses. He is trapped right next to this person in a tiny space. And understandably, you know, the person had been acting erratically. It's reasonable for him to have some fear of what could happen to him, right? So you have to consider that. I actually think the district court did not make that finding. The district court said, and that certainly is what the officer argued, he said, I did have concern for my own safety, but the district court said a reasonable jury could come to a different conclusion about whether it was reasonable for Officer Boycroft to actually have that fear. But I guess I would say just in response, maybe in the last three seconds of my time, is that you could start your analysis just from the point at which the arm is freed. And at that point, there isn't anything to take this case out of what I think is the controlling rule in this circuit, which is what this court said in McHugh. Can I ask you just on that last point, starting from that minute when the arm is freed, I take it your view is that it's not a reasonable reading of McHugh to think you have to be handcuffed in order to be subdued such that the McHugh test for consistent significant pressure kicks in. Correct. But what do we do about the reality, and I take it this may be, and I'm not sure that your opponents are arguing this or not, but the person's subdued, so they're restrained in some sense. I take it then handcuffing is a relatively normal thing to do. At some point, they're going to want to move from this position of restraining them without the handcuffs to handcuffing. So what is the margin for the kind of activity an officer can engage in to shift from, okay, I subdued without the handcuffs, so now we're going to handcuff. That's an issue not presented by McHugh itself. It is presented here. So to what extent is it clear to the officer that in making that transition, what was done here was clearly unacceptable as a mechanism? Do you follow that? Yeah, I follow that. I think I would point to this court. In McHugh, what this court did was identify a series of cases that it said stand for this basic clearly established right. And one of those cases was the Seventh Circuit decision in Abdullahi. And that case, I think, is very, very close to what happened here, because there you had officers that were attempting to handcuff a victim, were kneeing on his back while doing that for only 30 to 40 seconds. But that's what it was, 30 to 40 seconds. And the Seventh Circuit in that case said that qualifies as excessive force. And McHugh cited that case as one of the decisions that formed the basis for this rule. Now, I think the expert, the plaintiff's expert. And under our case law, it's clear that it's enough if it's clear under our precedent in order to make it clear. Correct. It doesn't have to be clear under Supreme Court precedent. Correct. This court has said it's either a decision of our circuit or a consensus view of the circuit. So you'd say the citation to Abdullahi put them on notice that that significant pressure test encompasses a situation in which the pressure's occurring during a time when you're just in the process of handcuffing. 30 to 40 seconds of compressive weight on the back. Is that the portion of Abdullahi? Is that the portion of the Seventh Circuit precedent that was relied on in McHugh? I mean, I think fairly red it was, yes. I mean, this court identified that time frame and that process. And I think maybe more to the point, in McHugh, the court didn't identify, you know, the technical distinction between being handcuffed or not as relevant to the understanding of what the clearly established right is in these cases. Any further questions? Thank you. Thank you, Your Honors. Thank you, Your Honors. I'd just like to begin by addressing that last point when we were talking about McHugh and whether or not it requires that consistent significant pressure. The McHugh court in its analysis contrasted the earlier kicking of the subject in that case with his later relative inactivity. And there are about 20 sites in the defendant's brief that indicate that Mr. Miller continued to kick and thrash. Well, what do we do with the, are you challenging, what are you doing in this appeal with respect to the portion of the district court's analysis that your opponent pointed us to in which the district court says a reasonable officer with their training would have understood at that point that he was not resisting even if his legs were moving? You seem to be challenging that finding. No, Your Honor, I'm not challenging it, but I'm saying that it was made without any clearly established precedent that says if an officer is trapped underneath the subject. Well, what about the minute period where the arm is free? Well, I do not agree that the district court found that minute period. I think that's an argument that the plaintiff is making, and it might feel good to have that precision of numbers and minutes and seconds to discuss, but the truth is the concrete evidence in this case that the court is permitted to look at beyond the findings of the district court does indicate But is the premise of your appeal that there is no minute where the arm is free? Correct. So if we read the opinion differently, then we have no jurisdiction to consider the argument you're making to us, is that right? I would like you to consider it even in that context because there's no precedent saying that an officer who's compromised who can't get into position. But that's dependent on the arm not being free. Well, correct. Correct, Your Honor. With respect to the district court's finding and wording, it's clear to me and I hope it's clear to the court that the district court judge was looking at the issue from the point of while Mr. Miller was being restrained by two officers. At page 904 and 913 of her memorandum, she is focused on the process of restraining and handcuffing Mr. Miller. So there is no evidence again that there was any post-restraint or post-subdued or incapacitated pressure applied. Thank you very much.